GLICKSTEIN, Judge,
dissenting.
The facts in this matter include the following: Detective O’Neil set up surveillance of Everard’s home. Detective O’Neil positioned himself across the street about thirty-five to forty feet from Everard’s sliding glass door. O’Neil testified that he saw a hand unlock the door and someone look through the drapes (later identified as Everard.) O’Neil testified that he saw Ev-erard pull the drapes aside, that Everard was clad only in white briefs, and that he was fondling himself. O’Neil testified that he could see all of this with his plain eyes, but he did use either binoculars or a zoom lens on the camera to look in closer. O’Neil testified that the sliding glass door *428 is no more than fifteen feet from a public access road where vehicles and pedestrians walk past daily. O’Neil took some photographs which were introduced into evidence, and only showed what appears to be a hand at the window and possibly a person looking out. O’Neil indicated that he was unable to get a shot of Everard masturbating.
Everard moved to suppress O’Neil’s observations because he argued that the use of binoculars and the zoom lens on the camera were an intrusion into his home without a warrant. The motion was denied. Everard also made a motion to dismiss on grounds that the facts alleged by the state did not show a violation of the statute because Everard was within his own home and not visible from the private residence of another. That motion was also denied. Everard thereafter pled no contest and preserved the right to appeal the orders denying his motions to dismiss and suppress. The state stipulated that either motion would be dispositive. Ever-ard was sentenced to six months probation.
Pursuant to rules 9.030(b)(4) and 9.160, Florida Rules of Appellate Procedure, the county court judge certified the following issue as one of great public importance:
CAN AN INDIVIDUAL DEFENDANT’S ACTIONS CONVERT WHAT IS AN OTHERWISE PRIVATE HOME INTO A PUBLIC PLACE WITHIN THE MEANING OF FLORIDA STATUTE 800.03?
The majority declines to accept jurisdiction by finding in the exercise of its discretion that the issue presented is not one of great public importance. I believe that the issue raised is an unresolved legal issue that we should address at this time. See P. Padovano, Florida Appellate Practice §§ 2.11-2.12 (1988). I would have this court accept jurisdiction and affirm appellant’s conviction pursuant to section 800.03, Florida Statutes (1987).
Section 34.017, Florida Statutes (1987), provides:
(1)A county court is permitted to certify a question to the district court of appeal in a final judgment if the question may have statewide application, and:
(a) Is of great public importance; or
(b) Will affect the uniform administration of justice.
(2) In the final judgment, the trial court shall:
(a) Make findings of fact and conclusions of law; and
(b) State concisely the question to be certified.
(3) The decision to certify the question to the district court of appeal is within the sole discretion of the county court.
(4) The district court of appeal has absolute discretion as to whether to answer a question certified by the county court.
(a) If the district court agrees to answer the certified question, it shall decide all appealable issues that have been raised from the final judgment.
(b) If the district court declines to answer the certified question, the case shall be transferred to the circuit court which has appellate jurisdiction.
Rule 9.160, Florida Rules of Appellate Procedure, allows appeals from issues certified by the county court. The committee notes state that:
The committee concluded that any order which is certified to be of great public importance might have statewide application and that any order which would affect the uniform administration of justice would also be of great public importance. Therefore, the additional statutory language was deemed to be surplusage, and the rule refers only to the requirement of certifying the order to be of great public importance.
Judge James C. Hauser, in his article, The Newest Appeal: Direct Appeal from the County Court to the District Court of Appeal, The Florida Bar Journal, November, 1985, suggests:
The direct appeal from county court to the district court of appeal certified to be of great public importance will solve many problems.
First, by permitting the issue to be decided by a district court, it will create uniformity. In most circuits, the appellate decisions of circuit court judges are not published. As a result, neither the bench nor bar is aware that an appellate *429 decision has been made. Further two circuit court judges could disagree on the same issue, the result being an unresolved conflict in that particular circuit.
Second, district courts of appeal are better equipped to handle appeals since they have both law clerks and computer research tools. The district courts of appeal are geared toward appeals whereas circuit courts are not; they are geared for trials.
Third, there are many areas of law at the county court level where there are no appellate cases to guide county court judges. There is almost no appellate case law in residential landlord-tenant, mobile home evictions, or driving under the influence of alcohol cases, all of which are uniquely within the jurisdiction of the county courts. [Footnotes omitted.]
Each of the judges here has two staff attorneys employed to work with the individual judge. The attorneys spend their time in research, analysis and recommendations and have immediate access to computer research tools. Given the fact that a circuit judge may have little or no research assistance, and this court has these assists, may be why, in the past, we have not been as reluctant as the present majority to accept “pass through” jurisdiction in a number of cases. See Drigotas v. State, 531 So.2d 421 (Fla. 4th DCA 1988); Rice v. State, 525 So.2d 509 (Fla. 4th DCA 1988); Chu v. State, 521 So.2d 330 (Fla. 4th DCA 1988).